<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL ANN DILLON, : <br> : <br> Plaintiff, : <br> : **Civil Action No. 10-5853 (SRC)** <br> v. : <br> : **OPINION** <br> LIBERTY MUTUAL INSURANCE : <br> COMPANY and WAUSAU : <br> UNDERWRITERS INSURANCE : <br> COMPANY, : <br> : <br> Defendants. | |

<u>CHESLER</u>, District Judge

This matter comes before the Court on the motion by Defendants Liberty Mutual Insurance Company and Wausau Underwriters Insurance Company (collectively, "Liberty Mutual" or "Defendants") to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(c) [docket entry 14]. Plaintiff Cheryl Ann Dillon ("Plaintiff") has opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, Defendants' motion will be granted.

**I.    BACKGROUND**

This action was initiated by Cheryl Ann Dillon after Liberty Mutual allegedly delayed providing her medical benefits following an accident occurring at Palisades Medical Center, her place of employment. Plaintiff avers that she suffered a workplace accident on July 16, 2010,

which she immediately reported to her direct supervisor. On July 20, 2010, Plaintiff received medical treatment for her injury from Dr. Sayed Jafri, Chairman of the Neurology Department of Palisades Medical Center. Dr. Jafri advised Plaintiff to remain out of work because of her medical condition and referred her to one of the hospital's consulting neurosurgeons, Dr. Frank Moore, who opined that Plaintiff was a likely surgical candidate.

According to Plaintiff, on August 26, 2010, a case manager for Liberty Mutual contacted her. Plaintiff asserts that she informed the case manager that she was in "desperate need of treatment," that she was having difficulty working, and that Dr. Jafri and Dr. Moore advised her that she might "possibly need back surgery." (Am. Compl.¶ 12, Mar. 8, 2011.) Subsequently, on September 8, 2010, Plaintiff's counsel contacted Liberty Mutual and requested medical treatment for Plaintiff. The same day, Plaintiff filed a motion for medical and temporary benefits with the Division of Workers' Compensation.

On September 8, 2010 Liberty Mutual requested medical authorizations from Plaintiff and on September 16, 2010, it appointed Dr. Ari Ben-Yishay to examine Plaintiff. Subsequent to his examination on September 23, 2010, Dr. Ben-Yishay issued a report recommending treatment by way of an L3-4 transforminal epidural and two to three weeks of physical therapy. Dr. Ben-Yishay also recommended an L3-4 diskectomy should Plaintiff fail in this conservative treatment.

On October 13, 2010, Plaintiff's motion for medical and temporary benefit was heard by the Honorable James Welsh, Supervising Judge of Compensation. Judge Welsh granted Plaintiff's motion and ordered Liberty Mutual to provide Plaintiff medical treatment with Dr. Ben-Yishay, in accordance with his report. As a result, on October 19, 2010, Liberty Mutual

mailed a letter to Plaintiff, advising her that she was authorized to seek treatment with Dr. Ben Yishay.  According to the Amended Complaint, after her first session of physical therapy that took place on November 4, 2010, Plaintiff was advised by Dr. Ben-Yishay that she was no longer authorized to receive physical therapy nor any other treatment.

As such, Plaintiff filed the Amended Complaint on March 8, 2011, alleging that Liberty Mutual "frivolously, willfully, wantonly, maliciously and/or intentionally" refused to and delayed in providing her with medical treatment in violation of the Workers' Compensation Act and its enforcement provisions of the New Jersey Administrative Code.  (Am. Compl. ¶¶ 46-48.)  As a result, Plaintiff avers that she sustained pain and suffering, deterioration of her medical condition, inability to return to work sooner, and mental anguish and severe emotional distress.  Plaintiff additionally claims that Liberty Mutual's failure to provide benefits in a timely fashion were "intentional," "egregious," and "outrageous," and committed in an attempt to evade the Act.  (Am. Compl. 10-12.)  Defendants filed the instant motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## II.   LEGAL ANALYSIS

### A.   Standard of Review

Rule 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed.R.Civ.P. 12(c).  Though procedurally it applies later in a case than a Rule 12(b) motion, which may be filed in lieu of a responsive pleading, a motion brought under 12(c) for failure to state a claim upon which relief may be granted is governed by the same standard applicable to Rule 12(b)(6) motions. *Turbe v. Gov't of the V.I.*,

938 F.2d 427, 428 (3d Cir. 1991).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true.  *Id.* at 1965; *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court will apply this standard in evaluating whether Plaintiff may proceed with her claims.

  **B.**  **Discussion**

The State of New Jersey's workers' compensation law specifically provides that when an employee agrees to serve in employment protected by the Workers' Compensation Act ("the

Act"), N.J.S.A. 34:15-1, *et seq.*, the exclusive remedy of the worker is to pursue a claim for benefits under the Act. *Charles Beseler Co. v. O'Gorman & Young, Inc.*, 911 A.2d 47, 49 (2006); *Flick v. PMA Ins. Co.*, 928 A.2d 54, 56 (N.J. Super. Ct. App. Div. 2007). The workers' compensation system functions "as an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." *Id.* The administrative agency specially created to adjudicate workers' compensation claims is the Division of Workers' Compensation within the Department of Labor and Workforce Development. *See* N.J.S.A. 34:15-49. The Division has "exclusive original jurisdiction of all claims for workers' compensation benefits" under the Act. *Id.* The exclusivity provision of the Act states:

> Such agreement *shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination* thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.

N.J.S.A. 34:13-8 (emphasis added). New Jersey courts have consistently enforced the Act's exclusivity provision, subject to the statute's narrow exception for intentional wrongs. *See, e.g., Tomeo v. Thomas Whitesell Constr. Co.*, 823 A.2d 769 (2003); *Kibler v. Roxbury Bd. of Educ.*, 919 A.2d 878 (N.J. Super. Ct. App. Div. 2007).

It is undisputed that Plaintiff's injuries at issue here were sustained during the course of her employment with Palisades Medical Center and are presumptively compensable under the Act. However, according to Plaintiff, Defendants' acts of willful and wanton disregard for the

medical recommendations of their authorized treating physician are not compensable under the Act and are therefore subject to common law remedies.  In support of her position, Plaintiff largely relies on *Rothfuss v. Bakers Mut. Ins. Co.*, 257 A.2d 733 (N.J. Super. Ct. App. Div. 1969), which this Court finds unpersuasive.  It is well settled in New Jersey that there is no direct action available to an injured employee against the employer, or against the employer's insurer when the insurer takes no action beyond that which is required under the Act and the carrier's insurance policy.  *Basil v. Wolf*, 935 A.2d 1154, 1165 (2007).  As such, *Rothfuss* is limited to allowing common law actions in circumstances in which the insurer undertook to treat an injured employee with a doctor employed by the insurer and then allegedly failed to provide appropriate medical care.  *Id.* at 735-36.  Similarly, in *Mager v. United Hospitals of Newark*, 212 A.2d 664, 668 (N.J. Super. Ct. App. Div. 1965), *aff'd*, 217 A.2d 325 (1966), the court held that the compensation carrier operating its own clinic for treatment of injured workers was subject to a common law action for alleged negligent treatment.  The rationale underlying the decisions in *Rothfuss* and *Mager* is "that the jurisdiction of our law courts was posited on the carriers' undertaking to treat, a duty not imposed on them by the Workers' Compensation Act."  *Cortes v. Interboro Mut. Indem. Ins. Co.*, 557 A.2d 1019, 1021 (N.J. Super. Ct. App. Div. 1988), *aff'd*, 557 A.2d 1001 (1989).  It should also be noted that *Rothfus* affirmed the dismissal of two counts, analogous to Plaintiff's claim in the instant case, that had charged the defendant with failing to provide prompt and adequate medical treatment.  *Rothfuss*, 257 A.2d at 735.  Instead, the court found that the proper remedy for such allegations was found solely in the Act, through

administrative remedies available before a judge of compensation.[1]  *Id.*

The Legislature specifically envisioned that there may be situations in which an employer or its insurance carrier may "unreasonably or negligently delay[]" providing compensation to an injured worker entitled to compensation benefits.  Based on its clear and unambiguous language, N.J.S.A. 34:15-28.2 provides a remedy for an insurer's refusal or denial of temporary disability benefits.  N.J.S.A. 34:15-28.2, entitled "Delay or refusal in payment of temporary disability compensation; penalty" provides:

> If a self-insured or uninsured employer or employer's insurance carrier, having actual knowledge of the occurrence of the injury, or having received notice thereof such that temporary disability compensation is due pursuant to R.S. 34:15-17, unreasonably or negligently delays or refuses to pay temporary disability compensation, or unreasonably or negligently delays denial of a claim, it shall be liable to the petitioner for an additional amount of 25% of the amounts then due plus any reasonable legal fees incurred by the petitioner as a result of and in relation to such delays or refusals.  A delay of 30 days or more shall give rise to a rebuttal presumption of unreasonable and negligent conduct on the part of a self-insured or uninsured employer or an employer's insurance carrier.

N.J.S.A. 34:15-28.2.  Apart from the twenty-five percent enhancement and counsel fee-shifting authorized under N.J.S.A. 34:15-28.2, the Division's administrative regulations set forth a panoply of enforcement mechanisms for judges of compensation listed at N.J.A.C. 12:235-3.16.[2]

---

[1] In addition to seeking damages for intentional disregard of medical recommendations pursuant to *Rothfuss*, Plaintiff seeks damages for Defendants' failure to comply with Judge Welsh's October 13, 2010 Order requiring Defendants to provide Plaintiff with medical treatment.  However, a plaintiff must still exhaust administrative remedies available to him, even in the face of an allegation of non-compliance with a court order.  *Flick*, 928 A.2d 54, 58.  Only if the remedies under N.J.S.A. 34:15-28.2 and N.J.A.C. 12:235-3.16 are exhausted and a party continues to flout the orders of a judge of compensation can a party resort to an action at law.  *Id.*

[2] The judges of compensation within the Division are vested with extensive powers to decide contested issues of eligibility for coverage, the proven nature and extent of a worker's

As such, "considered in combination, N.J.S.A. 34:15-28.2 and N.J.A.C. 12:235-3.16 are plainly designed to assure that a party's obligations under the compensation laws, and consequent rulings by judges of compensation adjudicating those obligations, must be taken . . . very seriously" and all avenues for relief available in the Division must be pursued prior to seeking judicial relief. *Flick*, 928 A.2d at 58.

Therefore, even when an employer, acting through its insurer, does not furnish necessary medical treatment when requested to do so by an employee, the exclusive remedy for the employee is to pursue a claim in the Division. *Basil*, 935 A.2d at 1165; *see Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou*, 851 A.2d 636, 643 (2004). New Jersey case law makes clear that common law liability arises where an insurer refuses to abide by its own physician *employee's* recommendations and does not support Plaintiff's broad characterization that a lawsuit can be filed any time an insurer delays providing medical benefits recommended by an *authorized* physician.[3]  Therefore, this Court concludes that Plaintiff is presently in the wrong

---

alleged disability, and the reasonable necessity of medical treatment required to address such work-related injuries. *Hopler v. Hill City Coal & Lumber Co.*, 76 A.2d 17, 20 (1950). Review of final decisions of the Division jurisdictionally is assigned to the Appellate Division, both by the Act and by general court rule. *See* N.J.S.A. 34:15-66; R. 2:2-3(a)(2).

[3] Plaintiff's emphasis on District Judge Noel Hillman's opinion in *Davis v. OneBeacon Ins. Grp.*, 721 F. Supp. 2d, 329 (D.N.J. 2010) is misplaced. *Davis* appears to focus on whether or not the *Rothfuss* remedy survives the 2008 amendments to the worker's compensation statutory and regulatory scheme. *Davis*, 721 F. Supp. 2d at 342. In *Davis*, Judge Hillman concluded that the *Rothfuss* remedy continues to apply in the very limited situation in which an insurer willfully fails "to provide medical benefits in a circumstance where it 'voluntarily undertook to examine and treat an injured employee by its *own doctor*." *Id.* at 343-44 (emphasis added). The present action, however, is controlled by *Flick* which deals with a situation in which "defendants repeatedly ignored and/or rejected the recommendations of physicians that [the insurer] had *authorized* to examine and treat the plaintiff as to the appropriate course of treatment to be rendered." *Flick*, 928 A.2d at 55 (emphasis added).

forum.[4] As such, Plaintiff's Amended Complaint is dismissed without prejudice, reserving to Plaintiff the right to exhaust her administrative remedies and to pursue necessary and appropriate judicial review or enforcement thereafter.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for judgment on the pleadings. An appropriate form of Order will be filed together with this Opinion.

                                              s/ Stanley R. Chesler
                                              STANLEY R. CHESLER
                                              United States District Judge

DATED: July 25, 2011

---

[4] Plaintiff also seeks damages for emotional and mental anguish suffered as a result of the denial of her disability benefits by Defendants. The reasoning in *Rothfuss* is applicable here. *See Dunlevy v. Kemper Ins. Group*, 532 A.2d 754, 757 (N.J. Super. Ct. App. Div. 1987). The Legislature recognized the need to impose sanctions when the party responsible for providing temporary disability benefits unreasonably or negligently fails to do so. It therefore provided the specific remedy of penalties in N.J.S.A. 34:15-28.2. "Had the lawmakers intended common law redress also be available for intentional conduct in failing to provide benefits, it could have readily done so in the manner of N.J.S.A. 34:15-8. The legislative omission persuades us that the lawmakers intended the penalty provisions of N.J.S.A. 34:15-28.[2] to be the exclusive remedy." *Dunlevy*, 532 A.2d at 757.

In addition, Plaintiff contends that N.J.S.A. 34:15-57.4, which permits the imposition of civil penalties for fraud committed under the Act, entitled her to a civil cause of action. However, this provision of the Act defines circumstances where a compensation court can impose civil penalties and does not provide for a cause of action. *See Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd & Laracuente*, No. 04-03919, 2005 U.S. Dist. LEXIS 22654 at *18 (D.N.J. Sept. 29, 2005) (holding that the Workers' Compensation Court has jurisdiction to hear a Workers' Compensation fraud violation).